Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| SONEO ARCHILLA Y HERMANOS CORP.; Y AGUSTÍN ARCHILLA SANTIAGO<br><br>Peticionarios<br><br>V.<br><br>J.F. ABREU, INC. Y JULIO ABREU SÁEZ<br><br>Recurridos | KLCE202500615 | *Certiorari* procedente del Tribunal de Primera de Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: BY2024CV06709<br><br>Sobre: Incumplimiento de Contrato; Daños y Perjuicios Consignación |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de junio de 2025.

El 4 de junio de 2025, compareció ante este Tribunal de Apelaciones, Soneo Archilla y Hnos. Corp. y Agustín Archilla Santiago (en adelante, parte peticionaria) por medio de recurso de *Certiorari*. Mediante este, nos solicita que revisemos la *Resolución* emitida el 28 de abril de 2025 y notificada el 29 de abril de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la *Moción de Sentencia Sumaria Parcial* presentada parte peticionaria.

Por los fundamentos que adelante se exponen, se deniega la expedición del auto de *Certiorari*.

### I

Los eventos procesales del caso que dan lugar al recurso de epígrafe son los que en adelante se reseñan.

El 7 de noviembre de 2024, Soneo Archilla y Hermanos, Inc. (en adelante, la parte arrendataria o peticionaria) interpuso una

Número Identificador

RES2025 _____

*Demanda* sobre Incumplimiento de Contrato; Daños y Perjuicios y Consignación, en contra de J.F. Abreu, Inc. y Julio Abreu Sáez (en adelante, la parte arrendadora o recurrida).

En apretada síntesis, la parte peticionaria alegó en su *Demanda* que, por años, la familia del recurrido Julio Abreu Sáez operó el negocio Colmado Abreu, un negocio tipo cafetín, dedicado al expendio de bebidas alcohólicas al detal y cigarrillos, entre otros, así como a la operación de máquinas de entretenimiento y juegos de azar. Adujo que, El Colmado Abreu y el solar donde ubica dicho negocio, pertenecen actualmente al recurrido Julio Abreu Sáez. Añadió que, el 11 de octubre de 2023, J.F. Abreu, Inc. le arrendó el negocio, el inmueble y los activos del colmado cafetín a Soneo Archilla y Hermanos, Inc. Conforme a lo alegado, las partes pactaron la vigencia del contrato por el término de un año, a partir del 1ro. de octubre de 2023 hasta el 30 de septiembre de 2024, con una cláusula de renovación automática por tres periodos adicionales de un año, para un total de cuatro años con un canon de arrendamiento de $5,000.00 mensuales. Aseveró que las partes pactaron verbalmente un pago de $300.00 mensuales por concepto del consumo de agua de la propiedad arrendada. Asimismo, adujo que acordaron la transferencia a nombre del arrendatario de las líneas de crédito de los suplidores del Colmado Abreu, así como la transferencia del Permiso Único para la operación del Colmado Abreu y los permisos para la operación de las máquinas de entretenimiento y juegos de azar. Arguyó, además, que a instancias del codemandado Julio Abreu Sáez, Agustín Archilla Santiago adelantó la suma de $5,949.00 para cubrir los derechos y gastos necesarios para la transferencia del Permiso Único. La parte peticionaria alegó haber cumplido con todas sus obligaciones contractuales, no así, la parte recurrida.

En su *Demanda,* la parte arrendataria recabó del foro primario que le ordenara a la arrendadora 1) el cumplimiento cabal del contrato, incluyendo la renovación del contrato; 2) realizar todos los actos necesarios para implementar el contrato de arrendamiento, a fin de que la arrendataria pueda usar y disfrutar el bien arrendado según el fin convenido; 3) condene a J.F. Abreu, Inc. y al señor Julio Abreu Sáez, a pagar solidariamente a la arrendataria, las siguientes sumas: $5,949.00 adelantada para cubrir los derechos y gastos necesarios para la transferencia del Permiso Único; $54,442.00, por las pérdidas en ventas atribuibles a sus actos y omisiones; $8,000.00 por concepto de reembolso que recibió la parte arrendadora de uno de los suplidores del Colmado Abreu por concepto de los gastos incurridos en una actividad de promoción celebrada en las instalaciones del Colmado Abreu; $100,000.00 por los daños y angustias mentales alegadamente sufridos y ocasionados por los actos y omisiones de la parte arrendadora.

El 8 de noviembre de 2024, la parte peticionaria incoó *Moción sobre Consignación de Fondos* mediante la cual consignó en el foro primario la suma de $11,200.00 por concepto de cánones de arrendamiento vencidos y consumo de agua.

La parte recurrida fue emplazada el 14 de noviembre de 2024.

El 2 de diciembre la parte peticionaria presentó ante el foro *a quo* una *Segunda Moción sobre Consignación de Fondos* mediante la cual consignó en el foro primario la suma de $5,300.00 por concepto de canon de arrendamiento correspondiente al mes de diciembre de 2024 y consumo de agua.

El 3 de enero de 2025, la parte recurrida interpuso ante el foro de primera instancia *Moción Eliminatoria al Amparo de la Regla 10.5.* Al referido escrito se opuso la parte peticionaria el 13 de enero de 2025 mediante escrito intitulado *Oposición a la Moción Eliminatoria.*

Acaecidas varias incidencias procesales, innecesarias pormenorizar, el 23 de enero de 2025, la parte peticionaria presentó ante el foro primario *Demanda Enmendada* y el 3 de febrero de 2025, interpuso *Tercera Demanda Enmendada*. La parte peticionaria alegó, además, que el 27 de agosto de 2024, le notificó a la parte recurrida su intención de renovar el contrato donde opera el negocio conocido como Cafetín Abreu, a lo cual se rehusó la parte recurrida.

El 4 de febrero de 2025 la parte peticionaria presentó ante la primera instancia judicial *Cuarta Moción sobre Consignación de Fondos* mediante la cual consignó en el foro primario la suma de $5,300.00 por concepto de canon de arrendamiento correspondiente al mes de diciembre de 2024 y consumo de agua relacionados con el contrato en cuestión.

El 18 de febrero de 2025, la parte peticionaria presentó ante el foro primario *Moción para Solicitar el Retiro de Fondos Consignados por Concepto de Cánones de Arrendamiento Adeudados.*

El 8 de marzo de 2025, la parte recurrida presentó *Contestación a Segunda Demanda Enmendada y Reconvención.*

La parte peticionaria, a su vez, el 17 de marzo de 2025, presentó ante el foro *a quo*, la *Moción de Sentencia Sumaria Parcial*, objeto del recurso que nos ocupa.

Por otro lado, la parte recurrida presentó el 7 de abril de 2025, *Moción Eliminatoria y sobre Otros Otros (sic) Extremos.*

Atendidos los escritos de las partes, el 28 de abril de 2025, el foro primario emitió la *Resolución* recurrida, en la cual declaró No Ha Lugar la solicitud de sentencia sumaria de la parte peticionaria. En su dictamen, el tribunal *a quo* consignó los siguientes hechos que no están en controversia:

1. El 19 de noviembre de 2024 Abreu presentó un pleito de desahucio por precario y cobro de dinero (GB2024CV01032) contra Soneo.

2.  La vista de desahucio se celebró el 19 de diciembre de 2024.

3.  La Sentencia, notificada y archivada en autos el 26 de diciembre de 2026, dispone como sigue:

*El 11 de octubre de 2023, J. F. Abreu, Inc. y Soneo Archilla y Hermanos, Corp., suscribieron contrato de arrendamiento comercial, mediante el cual la primera arrendó a la segunda el negocio conocido como Colmado Abreu, sito en la Carretera 838, km. 1.6, de Guaynabo. El contrato consta suscrito por los señores Julio Abreu Sáez y Agustín Archilla Santiago, en capacidad de presidentes de las personas jurídicas implicadas, ante el notario público Iván Correa.*

*El término de arrendamiento inicial era del 1 de octubre de 2023, al 30 de septiembre de 2024. No obstante, el arrendador se comprometió expresamente a extender el período de arrendamiento por tres períodos adicionales de un año, "siempre y cuando el arrendatario cumpla con todos los términos y condiciones del presente contrato durante cada año". (Exhibit 1 conjunto, expositivo segundo, término y condición 1). Cónsono con lo anterior, pactaron que "[l]a parte arrendadora le concede a la parte arrendataria la opción de renovar el contrato por un período adicional de 3 años … previo a notificación por escrito, dentro del término de 60 días previos a la terminación del término original del contrato". (Exhibit 1 conjunto, expositivo segundo, término y condición 8, énfasis suprimido). La parte arrendataria notificó oportunamente y por escrito a la parte arrendadora su intención de renovar el contrato, mediante comunicaciones de 26 y 27 de agosto de 2024. (Exhibits 1 y 2 de la parte demandada).*

*En su demanda, la parte arrendadora aduce el incumplimiento con la cláusula 7 del contrato, alusiva a las obligaciones del arrendatario. Sin embargo, en vista de desahucio sumario celebrada en esta fecha, quedó de manifiesto el cumplimiento del arrendatario con sus obligaciones contractuales, más que cualquier incumplimiento era atribuible al proceder de la parte arrendadora.*

*De conformidad, se declara no ha lugar la demanda de desahucio en precario, toda vez que la parte demandada no ocupa la propiedad en calidad de precarista, por el contrario, lo hace en virtud de un contrato de arrendamiento comercial vigente.*

*En torno al reclamo en cobro de dinero, se evidenció que la parte demandante no aceptó los pagos correspondientes a los meses de octubre a diciembre de 2024. A su vez, que estas partidas constan consignadas en el tribunal, en el contexto del caso BY2024CV06709, reclamación por incumplimiento*

*de contrato, daños y perjuicios, y consignación, entre iguales partes. (Exhibit 3 de la parte demandada).*

*Así las cosas, se desestiman, sin perjuicio, tanto la causa de acción en cobro de dinero de la parte demandante como la reconvención de la parte demandada, en la medida que entrañan asuntos propios del caso BY2024CV06709, que eluden el proceso sumario de marras.*

REGÍSTRESE Y NOTIFÍQUESE.

En Guaynabo, Puerto Rico, a 19 de diciembre de 2024.

f/JULIO DE LA ROSA RIVÉ JUEZ SUPERIOR
(Énfasis suplido)

4. Abreu no recurrió ante el Tribunal de Apelaciones para revisar la Sentencia.

Asimismo, en su *Resolución,* el foro de primera instancia consignó el siguiente hecho controvertido:

1. Si el contrato de arrendamiento celebrado por las partes estaba vigente.

Por último, concluyó lo siguiente:

En primer lugar, debemos determinar si procede desestimar la reconvención por los fundamentos de cosa juzgada e impedimento colateral por sentencia, conforme las alegaciones de la parte demandante. Quien alega que la Sentencia dictada en el caso GB2024CV01032 dispuso de manera final de la controversia presentada en la reconvención.

Una lectura de esta nos lleva a concluir que la Sentencia aludida no adjudica de forma final y firme si el contrato de arrendamiento celebrado por las partes estaba vigente. Eso surge de la parte dispositiva donde se desestimaron, sin perjuicio, tanto la causa de acción en cobro de dinero de la parte demandante como la reconvención de la parte demandada, ya que el tribunal concluyó que entrañan asuntos propios del caso BY2024CV06709, que eluden el proceso sumario de marras.

Lo anterior implica que la Sentencia del caso GB2024CV01032 no dispuso de la controversia en sus méritos.

Como se expresa en la discusión del Derecho, relacionado a la sentencia sumaria, cuando no existe una certeza sobre todos los hechos en controversia, no procede dictar sentencia sumaria. Luego de evaluar en su totalidad los escritos presentados, el tribunal concluye que no debe utilizar el mecanismo de sentencia sumaria para resolver la totalidad de este

caso. El tribunal resuelve que existen controversias genuinas de hechos en el caso.

Por tanto, se declara **No Ha Lugar** la **MOCIÓN DE SENTENCIA SUMARIA PARCIAL**, presentada por la parte demandante.

En desacuerdo con lo resuelto, el 6 de mayo de 2025, la parte peticionaria presentó *Moción de Reconsideración*.

En respuesta, el 22 de mayo de 2025, la parte recurrida incoó *Moción en Cumplimiento de Orden y en Torno a Solicitud de Reconsideración de la Demandante {SUMAC 64}.*

El 22 de mayo de 2025, notificada ese mismo día, el foro *a quo* emitió una *Resolución*, mediante la cual dispuso:

> Examinada la **"MOCIÓN DE RECONSIDERACIÓN"**, presentada el 6 de mayo de 2025 por la parte demandante, así como, **"MOCIÓN EN CUMPLIMIENTO DE ORDEN Y EN TORNO A SOLICITUD DE RECONSIDERACIÓN DE LA PARTE DEMANDANTE. {SUMAC 64}**, presentada el 22 de mayo de 2025 por la parte demandada, este Tribuna determina lo siguiente:

> Se declara No Ha Lugar **MOCIÓN DE RECONSIDERACIÓN**, presentada por la parte demandante.

Aún inconforme, la parte peticionaria acudió ante este foro revisor mediante recurso de *Certiorari* y esgrimió el siguiente señalamiento de error:

> Erró el TPI al concluir que la Sentencia en el Caso de Desahucio no adjudicó de forma final y firme si el Contrato estaba vigente y denegar la solicitud de sentencia sumaria parcial al amparo de las doctrinas de cosa juzgada, impedimento colateral por sentencia y fraccionamiento de causas de acción. Su dictamen no responde a la interpretación más lógica y razonable de la Sentencia, conlleva un resultado injusto, anula *de facto* el efecto jurídico de una sentencia final y firme, es incompatible con la *ratio decidendi* de esa sentencia, fomenta la proliferación de acciones, atenta contra la economía procesal y conlleva re litigar una controversia ya resuelta, así como la indeseable probabilidad de fallos incompatibles relacionados con un mismo incidente.

En atención al recurso incoado, el 6 de junio de 2025, emitimos Resolución mediante la cual le ordenamos a la parte peticionaria que nos acreditara, en o antes del miércoles 11 de junio

de 2025, haber notificado copia del recurso de epígrafe al Tribunal de Primera Instancia de conformidad con la Regla 33 (A)[1], y a la parte recurrida, de conformidad con la Regla 33 (B)[2] del Reglamento de este Tribunal de Apelaciones. Le apercibimos que su incumplimiento, daría lugar a la desestimación del recurso.

De otra parte, le concedimos a la parte recurrida, hasta el lunes 16 de junio de 2025 a las 12 del mediodía, para que se expresara en torno al recurso de *Certiorari* incoado. Le advertimos que, transcurrido el término allí dispuesto, el recurso se entendería perfeccionado para su adjudicación final.

En cumplimiento con nuestra *Resolución* emitida el 6 de junio de 2025, compareció la parte peticionaria el 10 de junio de 2025 mediante *Moción en Cumplimiento de Orden*, y al día siguiente, interpuso *Moción en Torno a la Moción en Cumplimiento de Orden*. Mediante *Resolución* del 12 de junio de 2025, nos dimos por cumplidos respecto a la notificación del recurso.

Por otro lado, el 16 de junio de 2025, la parte recurrida presentó ante este foro revisor, escrito intitulado *Memoraandum (sic) en Cumplimiento de Orden y en Oposición a la Expedición del Auto de Certiorari*.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

**II**

**A. *El Certiorari***

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR

---

[1] 4 LPRA Ap. XXII-B, R.33(A).
[2] 4 LPRA Ap. XXII-B, R.33(B).

994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[3]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327

---

[3] Véase también *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

(2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio.[4] *Birriel Colón v. Econo y Otro*, 213 DPR 80, 90 (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622, 627 (2022). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).

---

[4] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021); *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 808 (2020); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[5] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71, 76 (2022). Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, pág. 335. De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otro*, supra, pág. 91.

En consonancia con lo anterior, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo.[6]

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir:

---

[5] *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *Velázquez Ortiz v. Mun. De Humacao,* 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 335.

[6] Véase, *Pérez Vargas v. Office Depot,* 203 DPR 687, 699 (2019); *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi*, 100 DPR 259 (1971).

(1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* 200 DPR 929, 940-941 (2018); *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 336.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó, además, en *Pérez Vargas v. Office Depot,* supra, que el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3 (e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción

una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335-336; *Serrano Picón v. Multinational Life Ins.,* supra.

En armonía con la normativa reseñada, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otro,* supra, pág. 90; *Ramos Pérez v. Univisión,* supra, págs. 215-216. Las meras afirmaciones no bastan. *Íd.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos. que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión,* supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra,* se podrán considerar como admitidos y se dictará la sentencia sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas et al.,* supra.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan et al.*, supra, pág. 611. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otro*, supra, pág. 91. De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd.*; *Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

### C. Impedimento colateral por sentencia

En nuestro acervo jurídico se ha reconocido la figura del impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada. El impedimento colateral por sentencia "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas."[7] Es decir, el impedimento colateral por sentencia impide que se litigue en un litigio posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. No obstante, a diferencia de la doctrina de cosa juzgada, la aplicación de la figura de impedimento colateral por sentencia no exige la identidad de causas, esto es, que la razón de pedir plasmada en la

---

[7] *A & P General Contractors, Inc. v. Asociación Caná, Inc.*, 110 DPR 753, 762 (1981).

demanda sea la misma en ambos litigios.[8]  Al igual que la doctrina de cosa juzgada, el propósito de la figura del impedimento colateral por sentencia es promover la economía procesal y judicial, y amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados. *P.R. Wire Prod. V. Crespo & Assoc.*, 175 DPR 139, 152-153 (2008).

Nuestro Tribunal Supremo ha señalado que la doctrina del impedimento colateral por sentencia, es una matización de la doctrina de cosa juzgada, la cual persigue el fin de los litigios y garantiza la certidumbre y seguridad de los derechos declarados.[9] En igual sentido, el impedimento colateral "tiene como propósito promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, evitar litigios innecesarios y decisiones inconsistentes".[10] *Universal Insurance y otro v. ELA y otros*, 211 DPR 455, 469 (2023).

En términos prácticos, el impedimento colateral por sentencia "impide que en un pleito posterior se relitiguen cuestiones de hecho o derecho necesarias para la adjudicación de un pleito anterior, independientemente de que haya sido por la misma causa de acción o por otra distinta, siempre que sea entre las mismas partes o sus causahabientes".[11]  Para que aplique, es necesario que concurran los siguientes requisitos: **(1) que el asunto de hecho o derecho sea el mismo en ambos pleitos; (2) que se haya litigado en un pleito anterior; (3) que se haya determinado mediante una sentencia**

---

[8] Véase *Rodríguez Rodríguez v. Colberg*, 131 DPR 212, 219 (1992). Sobre la identidad de causas, se señaló en *A & P General Contractors, Inc. v. Asociación Caná, Inc.,* supra, a la pág. 765, que en el contexto particular de la doctrina de cosa juzgada y de impedimento colateral por sentencia, tal requisito significa el fundamento capital, es decir, el origen de las acciones o excepciones planteadas y resueltas.
[9] *Beníquez v. Vargas*, 184 DPR 210, 225 (2012).
[10] *Presidential v. Transcaribe*, 186 DPR 263, 277 (2012).
[11] *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 497 (2010).

**final, y (4) que la determinación haya sido esencial para el fallo**.[12] (*Énfasis en el original*).

### III

La parte peticionaria nos solicita que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia, en la declaró No Ha Lugar su *Moción de Sentencia Sumaria Parcial*. En su único señalamiento de error, arguye que, erró el TPI al concluir que la *Sentencia* en el Caso de Desahucio[13] no adjudicó de forma final y firme si el contrato entre las partes estaba vigente y denegar la solicitud de sentencia sumaria parcial al amparo de las doctrinas de cosa juzgada, impedimento colateral por sentencia y fraccionamiento de causas de acción. Aduce que, el aludido dictamen no responde a la interpretación más lógica y razonable de la *Sentencia*, conlleva un resultado injusto, anula *de facto* el efecto jurídico de una sentencia final y firme, es incompatible con la *ratio decidendi* de esa sentencia, fomenta la proliferación de acciones, atenta contra la economía procesal y conlleva re litigar una controversia ya resuelta, así como la indeseable probabilidad de fallos incompatibles relacionados con un mismo incidente.

Como tribunal apelativo, en primer lugar, estamos obligados a examinar si tenemos jurisdicción para atender el recurso presentado, entiéndase, debemos determinar en primera instancia, si el promovente del recurso ha planteado un asunto comprendido en alguna de las excepciones de la Regla 52.1, *supra*. Veamos.

Como dijéramos, la parte peticionaria nos solicita la revisión del dictamen emitido por el foro *a quo*, en el cual declaró No Ha Lugar la *Moción de Sentencia Sumaria Parcial*. Es de notar que, estamos ante la denegatoria de una moción de carácter dispositivo.

---

[12] *Íd*, págs. 469-470.
[13] Caso Civil número GB2024CV01032 sobre Desahucio en Precario, instado ante el Tribunal de Primera Instancia, Sala de Guaynabo, por J.F. Abreu, Inc. en contra de Soneo Archilla y Hermanos, Corp.

Según el derecho esbozado anteriormente, la denegatoria de una moción de carácter dispositivo está comprendida dentro de nuestro nuevo estado de Derecho Procesal. Por lo tanto, en virtud de lo dispuesto por la Regla 52.1, *supra*, tenemos jurisdicción para revisar el dictamen emitido por el foro recurrido.

Por consiguiente, nos corresponde evaluar si la parte promovente de la moción de sentencia sumaria parcial cumplió con lo dispuesto por la Regla 36.3 de Procedimiento Civil, *supra.* Colegimos que, en efecto, la solicitud de la parte peticionaria incluyó: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Es decir, cumplió con los requisitos enumerados por el aludido precepto procesal.

A la referida moción dispositiva se opuso la parte recurrida mediante su escueta *Moción en Torno a Moción de Sentencia Sumaria de la Parte Demandada {SUMAC 5}.* Arguye, en síntesis, que toda vez que, la parte peticionaria no es un edificante de buena fe y de que en el presente caso no existe un conflicto de titularidad, los planteamientos de la parte peticionaria deben ser atendidos en una vista evidenciaria. Destacamos que, el escrito antes mencionado, no cumple cabalmente con lo dispuesto en la Regla 36.4 de Procedimiento Civil, *supra.*

Ahora bien, superada la primera etapa, procede hacer un segundo análisis. Esto es, debemos determinar si procede expedir el recurso de *certiorari* de epígrafe, considerando los criterios enumerados en la antes citada Regla 40 del Reglamento de nuestro Tribunal.

Evaluado minuciosamente el recurso presentado por la peticionaria y luego de una revisión *de novo* de la *Moción de Sentencia Sumaria Parcial,* colegimos que, no procede la expedición del auto de *certiorari*, y, en ausencia de los criterios expuestos en la Regla 40 de nuestro Reglamento, *supra*, resolvemos no intervenir con el mismo. Colegimos que, la determinación de la Juzgadora de instancia envuelve una controversia híbrida de hechos y de derecho que amerita ser dilucidada en una vista evidenciaria. En fin, razonamos que, la decisión recurrida no es manifiestamente errónea y encuentra cómodo asilo en la sana discreción del Tribunal de Primera Instancia.

Por último, aclaramos que con nuestra determinación no estamos prejuzgando los méritos de la controversia en el caso ni pasamos juicio sobre el dictamen recurrido.

**IV**

Por los fundamentos que anteceden, examinado el dictamen recurrido al amparo de los criterios para la expedición del auto de *certiorari*, en ausencia de los criterios expuestos en la Regla 40 de nuestro Reglamento, *supra*, resolvemos no intervenir con el mismo.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones